## PEOPLE v. DOLE.*

### L. A. No. 257; January 18, 1898.

#### 51 Pac. 945.

**Forgery.—Where Defendant, in a Prosecution for Forgery,** testified in his examination in chief that he had won the check in question at a game of cards, and also testified to his arrest, it was proper, on cross-examination, to ask him if he had admitted such fact to the arresting officers or to the jail officers.

**Forgery.—On a Trial for Forgery, Testimony That Witness** knew of a certain fluid which would remove ink marks from white paper was competent. If such evidence was irrelevant, the admission of it was harmless.

**Forgery.—It was Harmless Error to Charge That Defendant** was guilty of forgery, if he abetted the commission of the crime, where there was no evidence that he had done so.

**Criminal Law.—The Court Should not Charge in the Disjunctive** that a defendant is guilty if he "aided, abetted, or assisted" any other person to commit the crime.

**Criminal Law.—Error in Using the Disjunctive in a Charge** That Defendant was guilty if he "aided, abetted, or assisted" any other person to commit the crime was harmless.

**Criminal Law.—It was Harmless Error to Charge That "Where** Weaker Evidence is produced, when in the power of the party to produce · higher, it is presumed that the higher evidence would be adverse, if it had not been produced," where the record did not show that defendant offered weaker evidence when it was in his power to produce higher.

**Criminal Law—Instructions.—Where the Evidence was Largely** Direct and Positive, it was not prejudicial error to charge that, where the evidence is entirely circumstantial, yet it is not only consistent with the guilt of defendant, but inconsistent with any other rational conclusion, the jury must convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye-witnesses would have been.

APPEAL from Superior Court, Los Angeles County.

E. J. Dole was convicted of forgery, and he appeals. Affirmed.

H. T. Gage, Walter Bordwell and W. I. Foley for appellant; Attorney General Fitzgerald for the People.

---

*For subsequent opinion in bank, see 122 Cal. 486, 68 Am. St. Rep. 50, 55 Pac. 581.

GAROUTTE, J.—The defendant has been convicted of the crime of forgery, in raising the amount of a check from $2.50 to $850, and also forging certain indorsements thereon, with intent to defraud the State Loan and Trust Company. He is also charged with uttering the check as forged, with intent to defraud said loan and trust company.

1. The demurrer to the information was properly overruled, and likewise the objections to the admission of the check in evidence. There were some differences disclosed between the check set out in the information and the one introduced in evidence, but those differences were slight, and in no degree so substantial as to justify the rejection of the check in evidence by reason of the variance.

2. The defendant testified in his own behalf, and explained his connection with the check by stating that he won it from one Adams in a game of cards at Los Angeles city. He further testified that he was subsequently arrested in the city of San Francisco for the crime here charged. Upon cross-examination he was asked if he ever stated to the arresting officer, or to the officers of the Los Angeles jail, who held him in custody subsequent to his arrest that he obtained the check from Adams, or secured the possession of it in the manner aforesaid. To this line of cross-examination defendant objected upon the grounds that it was an invasion of his constitutional rights, and also not proper cross-examination. If the questions addressed to the defendant were proper cross-examination, then certainly no violation of his constitutional rights is shown. The lines drawn by the decisions of this court, marking the limits of the cross-examination of a defendant when he goes upon the witness-stand, are not clearly defined. Penal Code, section 1323, declares that he may be examined as to all matters about which he was examined in chief. This is substantially the rule of cross-examination as to other witnesses. In People v. Gallagher, 100 Cal. 475, 35 Pac. 80, the question here presented is carefully considered by the court; and upon a review of the California cases it is declared that any question that would have a tendency to elicit the truth from the witness as to the matters about which he has testified in chief, or anything that would explain, limit, modify or destroy the force of the evidence given in chief, is within the domain of proper cross-examination. It is there declared that by cross-examination his conduct

may be shown to be inconsistent with his statements made upon the witness-stand in his own behalf, and the negative answers of the witness to the questions now under consideration, to some degree certainly, indicated conduct inconsistent with the evidence he had given in his examination in chief. It might be said that the evidence of his conduct in this regard was in no sense conclusive of the fact sought to be established by it, but its weight was for the jury alone, and it cannot be said that it was absolutely valueless upon the point toward which it was directed. It is declared in the Gallagher case that, as to matters testified to by a defendant in chief, the doors are opened "for the most searching investigation, by cross-examination, as to the accuracy of his testimony, as fully as any other witness who might have given the same testimony." Tested by this rule, the cross-examination furnished no valid ground for objection. The case of People v. Elster, 2 Cal. Unrep. 315, 3 Pac. 884, cited to this point by appellant, is not authority, for the reason that the defendant was not a witness in his own behalf.

3. Under objection, a witness testified that he possessed knowledge of a certain fluid that would remove ink marks from white paper. The only purpose of such evidence would be to show that this check could have been raised from $2.50 to $850. The fact that the check had been raised from the smaller to the larger amount is practically conceded by the evidence; that is, there is clear and positive evidence to that effect, and nothing whatever to the contrary. Looking at the testimony, under these conditions, we are unable to see how the evidence materially strengthened the case for the people. But, aside from this, if it had any effect looking to the establishment of a material fact in the case, it was competent and admissible. If it had no such effect, then it was immaterial, and certainly entirely harmless. No possible injury to the defendant can be imagined from its admission, conceding it to be immaterial, and the error committed would be mere abstract error.

4. The trial judge gave the jury the following instruction as to the law of the case: "The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense charged in the information, or aided, abetted, or assisted any other person or persons to commit the same, then you should find the de-

fendant guilty.'' There is no evidence in the case to justify a jury in believing beyond a reasonable doubt that the defendant aided, abetted and assisted in the commission of the forgery. Under the evidence disclosed by this record, he was either a principal or not guilty, and for that reason that portion of the instruction bearing upon the defendant as an accessory should not have been submitted to the jury. Again, conceding the instruction pertinent to the facts of the case, the disjunctive conjunction ''or'' should not have been used between the verbs ''aid,'' ''abet '' and ''assist.'' They should have been joined by the conjunction ''and.'' By technical legal construction, a person may assist or aid in the commission of a crime, and still be possessed with no criminal intent, and therefore in no sense an accessory to the crime. While most probably the verb ''abet'' imports criminality, ''aid'' and ''assist'' do not. Yet it was said in People v. Bruggy, 93 Cal. 486, 29 Pac. 26: ''The practical administration of justice should not be defeated by a too rigid adherence to a close and technical analysis of the instructions of the court. Instructions are for the enlightenment of the jury as to the law of the case, and a jury never enters into such character of analysis in construing them.'' And we are satisfied that the instruction here under consideration did not mislead the jury to defendant's prejudice. To the ordinary mind, one who aids or assists in the commission of the crime of forgery is guilty; and this is true because to such a mind criminality is included as an element in the act of the party aiding or assisting. To the ordinary understanding, it would seem that as a person could not commit the crime of forgery without knowing it was a crime, neither could he aid nor assist in its commission without being aware of the criminality of his acts.

5. The court also instructed the jury as follows: ''Where weaker evidence is produced, when in the power of the party to produce higher, it is presumed that the higher evidence would be adverse if it had been produced.'' This instruction embodies a very poor attempt to express the principle of law of presumptions declared in subdivision 6, section 1963 of the Code of Civil Procedure. This subdivision of the section, properly quoted, is as follows: ''That higher evidence would be adverse from inferior being produced.'' It will be observed that the adjective ''weaker'' is not used

in the subdivision, and we are hardly prepared to say that "weaker evidence" and "inferior evidence" cover the same ground. Under the evidence in this case we find no demand for the giving of the presumption of law attempted to be declared by the foregoing instruction, even if it be conceded to be a proper principle to be given in exceptional criminal cases. But, again applying the principle laid down in the Bruggy case, we see no prejudicial error. The evidence called for no such instruction. By the record it is nowhere disclosed that the defendant offered "weaker" evidence when it was in his power to produce "higher" evidence. Hence the jurors, as honest men of average intelligence, could not have been misled by the declaration of the court in this regard. There being no facts in the case for.the application of the principle, we feel that no injury resulted to defendant from the charge.

6. The court gave the jury the following instruction: "Where the evidence is entirely circumstantial, yet it is not only consistent with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye-witnesses would have been." In view of the fact that the evidence in this case was not "entirely circumstantial," but very largely direct and positive, the facts of the case did not justify the giving of this instruction. Again, the distinction attempted to be made in the degree of evidence necessary to convict in cases of circumstantial evidence, as compared to cases of positive and direct evidence, is not satisfactory to this court. While the general principle declared here has some support in the case of People v. Cronin, 34 Cal. 201, yet it has been looked upon with disfavor in the later case of People v. Eckman, 72 Cal. 582, 14 Pac. 359. The better practice would be to refrain entirely from declaring any such distinction in instructing the jury in criminal cases. Under the facts of this case, the error is not a substantial one.

7. By a diminution of the record very serious objections to certain other instructions have been overcome; and, as to the refusal of the court to give defendant's instruction No. 10, we are satisfied the subject matter thereof is fairly covered by people's instruction No. 20. There are many other

grounds relied upon for a reversal of the judgment and a new trial. We have examined them all with care, and hold them insufficient to effect that result. Judgment and order affirmed.

We concur: Harrison, J.; Van Fleet, J.